The second and last case argued today is Global Check Services v. Electronic Payment Systems, Appeal No. 17-1062. Mr. Lonson, whenever you're ready. I understand that I may refer to an iPad from time to time when I'm making arguments? I'm sorry, can you speak up a little? I understand I can refer to my iPad from time to time when I'm making arguments? I keep a lot of notes on there, I just want to make sure I'm not... That's fine. Let me point the court to No. 17-1062, then you can stay there. I'm not sure by any means that SACA even intends to provide any control at all. May it please the court, this is an appeal from a district court decision that Global Check's patent was directed towards an abstract idea and therefore ineligible for patentability under Section 101. Mr. Lonson, I have only one question for you. Why did you concede that your patent was illegal under Step 1? Like opposing counsel, I was focused too much on the idea that post-dating checks as a form of short-term financing was a fundamental economic practice. What makes our patent different, however, is that turning those into electronic debits and leveraging the funds transaction networks is not something that was traditionally part of the short-term financing process. Could you describe what you mean by electronic debit? Because as I understand it, that means reading and extracting data out of paper checks and converting them into some kind of electronic data that can be processed by a funds transfer network. Is that right? Essentially, that is correct, Your Honor. And you didn't, or your client didn't invent that, right? There was already in banking and under the banking laws the notion of electronic debit for transferring electronically funds from the payer to the payee through a so-called electronic funds network. That concept did exist and that technology did exist. What is different here, however, is that he leveraged that technology in an unconventional manner. No one thought about treating post-dated checks as what are called accounts receivables under the funds transaction network rules. Normally, that was reserved for situations where checks are mailed in on a monthly basis. For example, if you are a utility, every month you get hundreds of checks from your customers for whatever their electronic bill was and those were processed through the system as accounts receivable. No one thought about using that on post-dated checks in these short-term financing transactions. That's where we differ and I think that's what elevates it. Can you pinpoint your invention? Because right now, as I understand your invention, I'm imagining a merchant receives paper form post-dated checks and files them away in some kind of file cabinet and then has some kind of tickler to remind him or her that a certain date has come around so the check is no longer post-dated, it can now be cashed. And what your invention is, is the idea of electronically extracting that data off those post-dated paper checks, storing them somewhere and then having some kind of electronic tickler that when the right day arrives, takes that stored electronic data and then sends it through the funds transfer network. Am I understanding the invention correctly? That is one description of the invention, your honor. Okay. And help me understand why that's an inventive concept when we already know that the principle that automating already established human implemented analog is not good enough under our precedent post-ALICE. I don't believe that it is automation of a human analog because of the way it uses the system, the funds transfer networks in an unconventional manner. How is it unconventional to use the funds transfer network that's pre-consisting? This is taking paper checks that merchants could have gotten in paper and deposited in paper at certain times and saying we're going to do it electronically through the funds transfer system. I don't understand why we're here. I mean we have had since ALICE a dozen or so of these cases that are exactly like this, which is taking a common financial practice from the real brick and mortar world and putting it on a computer and we find every single one of them eligible. And this one is exactly like those cases. I don't see how you distinguish this from any of those cases. It's buy safe. It's intellectual interest. It's all of these cases. It improves. What does it improve? It doesn't improve the financial network, does it? It doesn't improve a computer. It automates a process and makes it more efficient. We've said over and over and over again that using computers and networks to make a process, a pre-existing process work better or faster isn't good enough. Our position is that it improves the short-term financing process here. And that's exactly what we've said isn't good enough. It's a fundamental business practice that is improved by the use of a computer. It doesn't improve the computer. It doesn't improve the financial network. It doesn't improve anything technological. It improves the business practice. That's ineligible. There's another way to ask that same point. Even if this was eligible under 101, isn't it obviously obvious? Well, obviousness was… In other words, your notion of an inventive concept is obviously obvious. So it's not inventive. With all due respect, one, that issue wasn't raised at the trial level. And two, actually, that issue was pushed back and forth at the time in the USPTO when they were trying to get the patent granted. And there were several times it came back. And that was concerns that the examiners had. And eventually, GlobalCheck was able to work around that. But coming back to the problem, which obviously troubles the court, is why isn't this just like all the prior patents that have been validated? It's extremely difficult to find a business-method patent. I'm not even sure there is one that has survived Alice. And I'm not certain that Alice has wiped out business-method patents, although I don't think that was the intent of the Supreme Court. By focusing so much on the abstract idea of fundamental economic practices, we lose sight of the purpose of patents. And we lose sight of the Supreme Court's warning that if we focus too much on judicial exceptions, abstract laws of nature, natural phenomena, eventually we risk swallowing up the whole of patent law. For purposes of your appeal and your claimed invention, can you just try one more time to formulate what is the inventive concept here? The inventive concept was, as I said, leveraging the funds transfer networks in a way that allows post-dated checks to be treated as accounts receivable transactions. Right. And can you break that down a little more deeply? Sure. It's the idea of converting these post-dated paper checks into electronic data, right? And then when the time is ready, sending that electronic data over the funds transfer network. Is that the invention? That is, in part, yes, Your Honor. Okay. What am I missing out of that? One thing is, as we've said in our brief, bridging the gap between traditional presentations. You take the check to the bank. And using the fund transfer networks to process it as an electronic debit. EPS in their brief referred to a couple of patents involving converting checks into electronic debits to suggest that the idea of processing checks as electronic debits was not an inventive concept. Yet, apparently it was inventive enough for those patents to be granted. And to the best of my knowledge, those patents are still valid and subsisting today. Perhaps because nobody has challenged those patents yet. I mean, if they're just business method patents, they're probably gone too, aren't they? It depends on how broadly we're going to read Alice. And that is one of the problems with Alice. As I said here, we think that we improve upon a fundamental business practice. We create opportunity for merchants to, instead of having to hold these checks in a drawer somewhere, take them down to the bank every month, keep them straight. You come up with an electronic tickler system. Right, Your Honor.  Yes, Your Honor. Okay. If I may draw an analogy. One of the questions that this, one of the patents this court made, InVish versus Microsoft, which was assigned a little over a year ago, and that was directed at a software patent. The key question is whether the focus is on the specific improvement in computer capabilities or instead on a process that quantifies as an abstract idea for which computers are invoked merely as tools. In the context of a business method patent, I think the key question is similar. Whether the focus is on a specific improvement in a business method as opposed to an abstract idea for which computers are merely used as a tool. We have improved upon a business method here. I know that EPS relies on content extraction, which was the ATM case where the patent involved scanning data from checks and recognizing it and storing it. But that patent did nothing with the data. The global check patent does something with the data. It processes it as an electronic transaction. It results in something happening, money being transferred from point A to point B. That was already being done before, though, right? Transferring funds from point A to point B. That's correct, but it had not been done in this combination, Your Honor. And it had not been done in this particular manner. I would say it's the difference between taking a picture of a bridge and actually building the bridge. In this case, we built a bridge between traditional presentment and using the electronic funds transfer network to process what is otherwise a time-consuming and onerous task for the business owner. It also allows him to combine his check verification process with the processing and storing of the electronic data. You're into your rebuttal. I am, Your Honor. Would you like to save it? Yes, I do. Okay, let's hear from the other side. Good morning, Your Honors. Scott Problem on behalf of Electronic Payment Systems. And, frankly, you've made several of my points for me already, although I'm sure there are others that you may need me to answer. But overall, there was some criticism in the reply brief that EPS and perhaps the district court had not looked at this patent closely enough that it had too high a view of it. And, frankly, if you look at this patent claim by claim and really roll up your sleeves and look at what it says, it becomes less inventive the more you look. If you look at the process that's described in the patent, there's nothing new or inventive about it. You start with a first check, and you bring it in, and they do exactly what they do with any other check you use to buy a product. They run it through a funds availability analysis or a database, and they run it through essentially a check to see if there have been any or a check database to see if there have been any insufficient funding. The patent owner is saying that they, for the first time, have invented this bridge between all of that with post-dated checks and building this bridge to the electronic funds network to send off the data and those post-dated checks at the right time in an automatic fashion. That seems to be their proposed invention. What do you have to say about that? Well, there are two parts of it. One is as far as the conversion, and then the other is as far as presenting them at the wrong time. As far as the conversion is pointed out by the court, that conversion has existed for a long time and is recognized in the patent. So, again, we should look to the patent because it specifically recognizes in column 4, I think it's lines 26, the existence of this process to transfer funds electronically using an electronic funds network. So there's nothing inventive about that. Now, as to whether it solves an existing problem of they might take it out of the drawer at the wrong time, it doesn't really even solve that problem because the patent specifically contemplates that instead of the human factor being, am I going to take the check out of the drawer on the right day, the human factor is I have to put the right date into the computer. That is entered by keypad according to the word to the patent. So, again, if you look at the patent, it shows that it's just simply not inventive. So, if you go step by step, each step is a well-known process. The check guarantee check that's done or the check ratification check that's done when the first check comes in, known process. And it really doesn't even deal with post-dated checks. All it really does is, as you said, a ticker system. It puts the checks in an electronic drawer instead of the cash register drawer. And when the computer says that date comes up, it pulls it out, and it's no longer a post-dated check. And it processes it electronically using the known machines and the known systems. So, if you go through each step of the process, even when you get to the second and subsequent checks, the wording of the patent doesn't even use the verification process of the patent. They verify the first check, and based on that verification, they then change the format of all the checks to electronic debits. When the time comes up for that second check, this patent doesn't even go back through the verification process. So, as far as there being some kind of a bridge between the two processes, the check verification process and the actual processing of the checks through the electronic funds network, there is no bridge. First check's checked. When you get to the rest of them, they process them. And they process them using a typical scanner, a generic scanner that does what generic scanners do. They store it in a generic computer that does what computers do. And they send it across a funds transfer network that's intended just to transfer funds. So, there's really nothing, anything that is inventive about it. And the patent actually acknowledges each of those steps as already existing. So, there really just isn't this inventiveness anywhere in the patent. The gap that they say was bridged, if they're saying it's a gap between the electronic funds transfer and the check process, as the court's already identified, that gap was bridged long ago, and it has been bridged for a substantial period of time. All that they're actually doing, there's no real transformation of information here. What you have is you have a check that has certain data on it, and now it's being put into an electronic form that has the exact same data. An electronic form tells you the person's name, the amount of the check, the account it's drawn on, just like the check. So, there's really no inventive transformation there. The idea that it's solving the problem I think I've addressed, the problems that are addressed and identified in the patent differ a little bit from those that are identified by GlobalCheck in the briefing. The problem that you mentioned about does the check get pulled out on the wrong date is identified in the patent. But the only other problem that's identified in the patent is a problem that occurs if all the checks are written on the same date, and that's really not addressed or solved by the patent. So, it doesn't solve a problem, there's nothing new, there's nothing inventive. It's just simply a typical business method patent that this court and the Supreme Court has made clear is not eligible. So, I have some time left and I'll be glad to answer questions, but that's really the message that I wanted to convey today. I think we have your argument and we've had your briefing. Thank you very much. We'll hear Mr. Lons' rebuttal now. Actually, we don't have such a court having two separate questions, so we don't have any data irrelevant. Okay, thanks very much. Case is submitted. That concludes today's argument. All rise.